**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2644
_____

ANTHONY ALLEN, for himself and as parent of A.A.;
TODD BENNETT, for himself and as a parent of E.B.;
SCOTT EDELGLASS; SHARIR FELDMAN, for himself
and as parent of A.F. and J.F.; WERNER GRAF, for himself
and as parent of A.G. and A.G.;
KARL HAGBERG, for himself and as parent of E.H., A.H.
and C.H.; CLIFTON HILL, for himself and as parent of A.H.;
SAMIR JOSHI, for himself and as parent of J.J., J.J. and J.J.;
YEHUDA B. LITTON; SURENDER MALHAN, for himself
and as parent of E.M. and V.M.; CARLY OLIVIER, for
himself and as parent of M.O.; ANTONIO QUINLAN,
for himself and as parent of K.Q.; ZIA SHAIKH, for himself and
as parent of M.S., S.S., and H.S. for themselves and on behalf
of all others similarly situated

v.

LAWRENCE DEBELLO; TIMOTHY CHELL; KATHLEEN
DELANEY; JAMES M. DEMARZO; MADELIN
EINBINDER; MARLENE LYNCH FORD; CHRISTOPHER
GARENGER; LAWRENCE JONES; SEVERIANO
LISBOA; ANTHONY MASSI; JOHN TOMASELLO;
SHERRI SCHWEITZER;  NANCY SIVILLI; MAUREEN
SOGLUIZZO; STATE OF NEW JERSEY;  MICHELLE M.

SMITH, in her official capacity as Clerk, Superior Court of New Jersey;  JOHN L. CALL, JR., in his official capacity as Presiding Judge Chancery Division,  Family Part, Burlington County; CATHERINE L. FITZPATRICK; LISA THORTON; PATRICIA B. ROE, in her official capacity as Presiding Judge, Chancery Division, Family Part, Ocean County

(D.C. No. 3:14-cv-00760)

ANTHONY ALLEN for himself and as parent of A.A.; TODD BENNETT, for himself and as parent of E.B.; SHARIR FELDMAN, for himself and as parent of A.F. and J.F.; KARL HAGBERG, for himself and as parent of E.H., A.H. and C.H.; CLIFTON HILL, for himself and as parent of A.H.; CARLY OLIVIER, for himself and as parent of M.O.; ZIA SHAIKH, for himself and as parent of M.S., S.S. and H.S. for themselves and on behalf of all other similarly situated

v.

TIMOTHY CHELL; KATHLEEN DELANEY; JAMES DEMARZO; MADELIN EINBINDER, LAWRENCE JONES, SEVERIANO LISBOA; JOHN TOMASELLO; SHERRI SCHWEITZER, NANCY SIVILLI AND MAUREEN SOGLUIZZO

(D.C. No. 3:15-cv-03519)

Anthony Allen; Todd Bennett; Scott Edelglass;

2

Sharir Feldman; Werner Grag; Karl Hagberg; Clifton Hill; Samir Joshi; Yehuda B. Litton; Surender Malhan; Carly Olivier; Antonio Quinlan; Zia Shaikh,
                                                 *Appellants*

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 3:14-cv-00760 & 3:15-cv-03519)
District Judge:  Honorable Freda L. Wolfson

_____

Argued November 17, 2016

Before:  AMBRO, SHWARTZ, and FUENTES, *Circuit Judges*

(Opinion Filed:  June 27, 2017)

Paul A. Clark, Esq. **[ARGUED]**
Suite 1N
10 Huron Avenue
Jersey City, NJ 07306

*Attorney for Appellants*

Daniel J. Kelly, Esq.
Eric S. Pasternack, Esq.
Akeel A. Qureshi, Esq.
Benjamin H. Zieman, Esq. **[ARGUED]**
Office of Attorney General of New Jersey
P.O. Box 112
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

*Attorneys for Appellees*

_____

OPINION OF THE COURT
_____


FUENTES, *Circuit Judge*.

In this case, Plaintiffs, fathers of minor children in New Jersey, challenge the state law governing child custody proceedings between New Jersey parents. Seeking dramatic changes in the way New Jersey conducts these proceedings, Plaintiffs contend, among other things, that the "best interests

of the child" standard that New Jersey courts use to determine custody in a dispute between two fit parents is unconstitutional. To bring about their desired changes, Plaintiffs bring suit under 42 U.S.C. § 1983 and the Declaratory Judgment Act against state court judges who presided over their custody disputes, and seek declaratory and injunctive relief: a declaration that the challenged standards and practices are unconstitutional and unlawful, and an enforceable injunction against their use. But before reaching the merits of Plaintiffs' arguments, we first answer a threshold question: whether these state court judges are proper defendants in this Section 1983 suit.

## I.      Factual Background

### A.      Plaintiffs' Allegations

Plaintiffs allege that New Jersey's family courts have unconstitutionally deprived them of custody of their children and have unconstitutionally interfered with their fundamental rights to the care, custody and control of their children without a full hearing, in violation of the Fourteenth Amendment.

In addition to raising the "best interests of the child"

point identified above,[1] Plaintiffs allege that their parental rights were restricted, or that they were permanently or temporarily separated from their children, by order of the New Jersey family courts without adequate notice, the right to counsel, or a plenary hearing, *i.e.* without an opportunity to present evidence or cross-examine. They allege that New Jersey state court policy, authorized by the New Jersey Supreme Court and Appellate Division, denies parents a plenary hearing when one parent loses custody to the other parent. Plaintiffs further assert that although mothers and fathers are, in theory, treated equally in custody disputes under New Jersey law, in practice courts favor mothers. Additionally, they assert that New Jersey discriminates against indigent parents by failing to provide them with counsel in a divorce proceeding or other inter-parent dispute that results in a loss of custody. In short, as the District Court explained,

> Plaintiffs interpret the United States Constitution as requiring that when parents divorce or separate, each parent has a fundamental right to automatically receive 50-

---

[1] Plaintiffs assert that a court should not deprive a parent of his rights unless the court finds exceptional circumstances or unfitness, which Plaintiffs allege is akin to the standard New Jersey courts use in determining whether to deprive a parent of custody in a dispute between a parent and non-parent. Plaintiffs allege that New Jersey courts should use the same standard when evaluating a dispute between two parents. They allege that using separate standards denied them the equal protection of the law.

custody of his or her children, and that courts are limited to ordering a different custody arrangement only upon a finding, by clear and convincing evidence, in a plenary hearing (and with a right to counsel for both parents), that one of the parents abuses or neglects the child or is otherwise an unfit parent.[2]

This interpretation would, in the words of the District Court, "dramatically change the legal landscape of New Jersey and the laws governing child custody proceedings between parents."[3]

Plaintiffs bring suit under Section 1983 and the Declaratory Judgment Act[4] against New Jersey state court judges.[5] They seek declaratory and injunctive relief requiring Defendants to, among other things, provide a plenary hearing within ten days to any parent who has his right to the care, custody, and control of his children reduced through state action.

### B.     New Jersey's Custody Regime

Plaintiffs challenge the New Jersey state statute

---

[2] A46.

[3] *Id.*

[4] 28 U.S.C. § 2201.

[5] Plaintiffs initially sued other defendants, including the State of New Jersey, but those defendants were dismissed on bases that are not appealed here.

7

instituting the best interests of the child standard[6] and the New Jersey courts' policy on plenary hearings in custody disputes, which has not been codified by statute but instead developed in the state case law.[7] Under this case law, a plenary hearing is not required in every contested motion in New Jersey state court; a trial judge has discretion to decide such a motion without a hearing.[8] "It is only where the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful in deciding such factual issues, that a plenary hearing is required."[9]

---

[6] *See Hand v. Hand*, 917 A.2d 269, 271 (N.J. Super Ct. App. Div. 2007) ("Custody issues are resolved using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c)."); N.J. Stat. Ann. § 9:2-4 (setting out such factors and providing that "[t]he court shall order any custody arrangement which is agreed to by both parents unless it is contrary to the best interests of the child.").

[7] On appeal, Plaintiffs allege that they "do not seek to have any statute declared unconstitutional." Plaintiffs' Brief at 4. However, this contention is inconsistent with the operative complaint, in which they do challenge the constitutionality of the best interest of the child statute.

[8] *Shaw v. Shaw*, 351 A.2d 374, 376 (N.J. Super. Ct. App. Div. 1976).

[9] *Id.*; *see also Lepis v. Lepis*, 416 A.2d 45, 55 (N.J. 1980) ("We therefore hold that a party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary . . . . Without such a standard, courts would be obligated to hold hearings on every modification application.").

## II.     Jurisdiction and Standards of Review

We have jurisdiction under 28 U.S.C. § 1291. "Because this case comes to us upon a Rule 12(b)(6) motion to dismiss, we accept the factual allegations contained in the Complaint as true, but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements."[10] Our review of the grant of a motion to dismiss is plenary.[11] However, to the extent the denial of declaratory relief was discretionary, we review for abuse of discretion.[12]

Before the District Court, the state defendants asserted that Plaintiffs' suit improperly attempts to appeal concluded and pending state court proceedings—their final and ongoing divorce and custody proceedings—and that the District Court lacked jurisdiction to hear the case under the *Rooker-Feldman* doctrine.[13] The District Court found that *Rooker-Feldman* did not apply, because Plaintiffs do not challenge the state court custody decisions themselves, but instead the policies underlying those decisions. Defendants do not raise this

---

[10] *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

[11] *Santiago v. GMAC Mortg. Grp., Inc.*, 417 F.3d 384, 386 (3d Cir. 2005).

[12] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995); *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017).

[13] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).

doctrine on appeal, but because we have a continuing obligation to determine for ourselves whether subject matter jurisdiction is or was in question,[14] we consider the doctrine's application to this suit.

*Rooker-Feldman* prohibits a federal court from exercising subject matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[15] As both we and the Supreme Court have explained, the doctrine has narrow applicability. *Rooker-Feldman* does not bar suits that challenge actions or injuries underlying state court decisions—and especially those that predate entry of a state court decision—rather than the decisions themselves.[16] Four requirements must be met in

---

[14] *Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002).

[15] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[16] *See Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (finding that *Rooker-Feldman* did not bar jurisdiction because "Skinner does not challenge the adverse [state court] decisions themselves; instead, he targets as unconstitutional the Texas statute they authoritatively construed"); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010) ("To the contrary, when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court.").

order for *Rooker-Feldman* to bar suit: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."[17]

In line with these decisions, our Circuit previously found that *Rooker-Feldman* did not bar suit in *B.S. v. Somerset County*, whose facts were similar to those in the present case.[18] In *B.S.*, a mother sued after Somerset County Children and Youth Services obtained an order from a Pennsylvania state court judge transferring custody of her daughter to her father. We held that "[b]ecause the injury Mother claims is likewise traceable to [the defendants'] actions, as opposed to the state court orders those actions allegedly caused, we reject [the defendants'] contention that the *Rooker-Feldman* doctrine precludes federal subject matter jurisdiction."[19]

Like in *B.S.*, Plaintiffs here are not challenging the state court judgments, but the underlying policy that governed those judgments: the alleged policy of the New Jersey state courts of stripping parents of custody, in favor of the other parents, without a plenary hearing and employing an allegedly improper best-interests-of-the-child standard in such

---

[17] *Great W. Mining*, 615 F.3d at 166 (internal citations, quotation marks, and alterations removed).

[18] 704 F.3d 250 (3d Cir. 2013).

[19] *Id.* at 260.

proceedings. Thus, *Rooker-Feldman* does not bar suit.[20]

## III.  Discussion

Plaintiffs challenge the two orders of the District Court granting the Defendants' successive motions to dismiss on two bases.[21] First, they appeal the District Court's decision that Defendants were not proper parties to a suit brought under Section 1983. Second, they argue that the District Court should have granted them declaratory relief under the Declaratory Judgment Act, arguing that jurisdiction under the Act is co-extensive with jurisdiction under Article III.[22]

### A.  Are Defendant Judges Properly Sued under Section 1983?

"It is a well-settled principle of law that judges are

---

[20] *Younger* abstention, which requires federal abstention in limited cases involving parallel state proceedings, and the domestic relations exception also do not bar review of this case, for the same reasons cited by the District Court. *See* A19-21 (domestic relations exception); A21-24 (*Younger* abstention).

[21] The second motion was technically granted in part, but then became final when remaining claims were resolved.

[22] In addition to responding to Plaintiffs' arguments, Defendants ask us to rule on the merits of Plaintiffs' complaint and find that on the merits Plaintiffs' claims would not survive a motion to dismiss. We note, however, that the District Court did not rule on the merits of Plaintiffs' claims because it dismissed the complaint on procedural grounds.

generally 'immune from a suit for money damages.'"[23] Although the Supreme Court in *Pulliam v. Allen* held that judicial immunity was not a bar to claims for injunctive or declaratory relief under Section 1983,[24] following this decision, in 1996, Congress passed the Federal Courts Improvement Act, amending Section 1983 with the intent to overrule *Pulliam*.[25] The amended Section 1983 clarifies that "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The amended language "does not expressly authorize suits for declaratory relief against judges. Instead, it implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate."[26]

Two key Third Circuit cases address whether judges are proper parties to a Section 1983 suit: *Reynolds*[27] and

---

[23] *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (quoting *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam)).

[24] 466 U.S. 522, 540-42 (1984).

[25] *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-8 (3d Cir. 2000).

[26] *Id.* at 197-98; *see also id.* at 198 ("The language is not an express authorization of declaratory relief, but simply a recognition of its availability or unavailability, depending on the circumstances, which the statute does not delineate.").

[27] *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194 (3d Cir. 2000).

*Georgevich*.[28] These cases apply a test borrowed from the First Circuit's seminal case on this subject, *In re Justices*.[29] Under the *In re Justices* test, a judge who acts as a neutral and impartial arbiter of a statute is not a proper defendant to a Section 1983 suit challenging the constitutionality of the statute. This is because "[j]udges sit as arbiters without a personal or institutional stake on either side of [a] . . . controversy" and they "have played no role in [a] statute's enactment, they have not initiated its enforcement, and they do not even have an institutional interest in following their prior decisions (if any) concerning its constitutionality if an authoritative contrary legal determination has subsequently

---

[28] *Georgevich v. Strauss*, 772 F.2d 1078 (3d Cir. 1985) (en banc). Section 1983 was amended between the issuance of our decisions in *Georgevich* and *Reynolds*. However, *Reynolds* cited and distinguished *Georgevich* with no mention that the Section 1983 amendments had called part of its holding into question. Thus, we continue to apply its holding. In any event, Plaintiffs do not persuasively argue that injunctive and declaratory relief warrant different "proper party" treatment under the amended § 1983. *See Wolfe v. Strankman*, 392 F.3d 358, 365-66 (9th Cir. 2004) (analyzing whether judicial-capacity judges were appropriate § 1983 defendants in a suit seeking "prospective injunctive and declaratory relief").

[29] *In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17 (1st Cir. 1982). Although *In re Justices* was decided before *Pulliam* and before the 1996 amendment to Section 1983, we have continued to adopt and apply its test. *See Reynolds*, 201 F.3d at 198.

been made."[30] However, a judge who acts as an enforcer or administrator of a statute can be sued under Section 1983 for declaratory or (if declaratory relief is unavailable) injunctive relief.[31]

---

[30] *Id.* at 21; *see also id.* at 25 ("To require the Justices unnecessarily to assume the role of advocates or partisans on these issues would tend to undermine their role as judges. To encourage or even force them to participate as defendants in a federal suit attacking Commonwealth laws would be to require them to abandon their neutrality and defend as constitutional the very laws that the plaintiffs insist are unconstitutional—laws as to which their judicial responsibilities place them in a neutral posture. Indeed, a public perception of partiality might well remain even were the Justices to take no active part in the litigation. The result risks harm to the court's stance of institutional neutrality—a harm that appeal would come too late to repair.").

[31] *See Sup. Ct. of Va. v. Consumers Union of Am., Inc.*, 446 U.S. 719, 736 (1980) (holding that plaintiffs could sue judges in their enforcement capacities to enjoin them from enforcing bar membership requirements that the judges themselves promulgated); *In re Justices,* 695 F.2d at 23 ("In *Consumers Union,* unlike the case before us, the requirements under attack were promulgated by the judges themselves in the form of court rules; the judges had acted in a legislative capacity, which made their involvement in the litigation more direct and which gave them an institutional stake in the litigation's outcome. It is therefore not surprising that the Supreme Court in *Consumers Union . . .* treated the judicial defendants as having acted in a nonadjudicatory (enforcement) capacity.").

In *Georgevich* and *Reynolds*, we have twice applied the *In re Justices* test to determine whether state court judges could face suit under Section 1983, coming to two different outcomes based on the role and authority of the state court judges. In *Georgevich*, we held that state court judges who were administrators of the parole power under state statutes were proper parties to a Section 1983 suit challenging the constitutionality of those statutes.[32] In so holding, we observed that "[t]he Pennsylvania statutory arrangement divides the authority to make parole decisions between the sentencing judges and the Board."[33] Thus, there was "no basis for distinguishing the role of the sentencing judges from that of the Board" and "no reason why the Board, but not the judges, may be sued on a similar challenge."[34]

In *Reynolds*, on the other hand, we found state court judges who had committed minors to involuntary drug and alcohol treatment services, as set forth by a state statute authorizing this commitment, to be improper defendants to a suit for declaratory relief challenging the constitutionality of the statute. We considered these judges to be neutral adjudicators, not enforcers or administrators of the statute.[35] As the judges did not initiate the proceedings under the

---

[32] *Georgevich*, 772 F.2d at 1087 ("This is not a case in which judges are sued in their judicial capacity as neutral adjudicators of disputes . . . . Rather, the judges are sued as enforcers of the statutes, in other words as administrators of the parole power.").

[33] *Id.* at 1088.

[34] *Id.*

[35] *Reynolds*, 201 F.3d at 199.

statute and were required to appoint counsel for the minors and order an assessment of each minor's alleged drug and/or alcohol dependency, we held that "[t]he judge's position in the . . . proceeding is simply not adverse to that of the minor."[36] We further explained that the informality of the process "[did] not alter the position of the judges as neutral arbiters."[37] We explicitly distinguished *Georgevich*: "although in *Georgevich* we held the judges amenable to suit under § 1983, our decision nevertheless recognized the impropriety of such suits where the judge acted as an adjudicator rather than an enforcer or administrator of a statute."[38]

Thus, the question here is whether, as the District Court found, the state court judges sued here are neutral arbiters of the New Jersey custody statute and its policies like the judges in *Reynolds*, or if instead they have enough latitude under the statute and policies that they become enforcers like the judge defendants in *Georgevich*. The answer is not clearly decided by our case law, as the proceedings at issue here do not have all of the same protections as those in *Reynolds*—mainly, the mandatory appointment of counsel.

Decisions from our sister Circuits applying the *In Re Justices* test help to clarify. In *Grant v. Johnson*,[39] the Ninth Circuit found that a judge had acted in his adjudicative capacity by appointing a guardian for a person deemed

---

[36] *Id.*

[37] *Id.* at 200.

[38] *Id.* at 199.

[39] 15 F.3d 146, 148 (9th Cir. 1994).

17

mentally incompetent. Although the proceeding did not require notice or hearing, it was initiated by a third party (in this case, the plaintiff's former husband) and was not initiated by the judge himself. Because the judge had acted in his adjudicative capacity, he was not a proper party to the suit.

In *Bauer v. Texas*,[40] the plaintiff sued the presiding judge of a probate court in his official capacity, seeking declaratory judgment under Section 1983 that Section 875 of the Texas Probate Code was unconstitutional. That Texas statute permitted the court to appoint a temporary guardian for an incapacitated person after three conditions were satisfied: 1) there was substantial evidence establishing probable cause, 2) an attorney was appointed to represent the incapacitated person, and 3) notice was given and a hearing was held. The Fifth Circuit found that "judicial determinations [under] section 875 are . . . clearly within a judge's adjudicatory capacity, as this statute requires notice and a hearing, among other safeguards and limitations."[41] Like in *Grant*, the Fifth Circuit further noted that the Texas court did not initiate the request for temporary guardianship.[42] Thus, it found that the state court judge was not a proper party to the suit.[43]

The First Circuit has affirmed the dismissal of a suit

---

[40] 341 F.3d 352 (5th Cir. 2003).

[41] *Id.* at 360-61.

[42] *Id.* at 361.

[43] That decision ultimately rested its conclusion on Article III grounds, finding that there was no case or controversy, but is nonetheless relevant to our discussion.

even more similar to the present case, *Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts*.[44] In *Nollet*, men who were litigants in domestic relations and/or abuse prevention matters in the trial courts of Massachusetts sued state court judges under Section 1983, seeking declaratory and injunctive relief. They objected to state statutes that permitted the granting of temporary restraining orders at ex parte hearings.[45] In spite of the "wide latitude" the state statutes gave the state court judges "in fashioning the conditions of both temporary and permanent restraining orders," the judges were found to have acted in their adjudicatory capacity, "because the statute neither confers upon them the power to initiate actions, nor does it delegate to them any administrative functions."[46]

In this case, because we conclude that the judicial defendants have acted in an adjudicatory capacity and not in an enforcement capacity, they are not proper defendants. To be sure, the best-interests-of-the-child standard statute gives state court judges broad discretion to determine a custody situation. State court judges also have broad discretion to decide motions on the papers under New Jersey Supreme Court and Appellate Division precedent. However, like in *Reynolds*, *Grant*, *Bauer*, and *Nollet*, the state court judges themselves do not have any right to initiate these actions. Instead, a parent must initiate a custody dispute. Nor were the state court judges here given any administrative function.

---

[44] 83 F. Supp. 2d 204 (D. Mass.), *aff'd*, 248 F.3d 1127 (1st Cir. 2000) (unpublished per curiam table decision).

[45] *Id.* at 206.

[46] *Id.* at 211.

Moreover, the state court judges did not promulgate either the statutes or the judicial standards to which the Plaintiffs object. Furthermore, where the judge determines that there is a genuine issue as to a material fact relating to the custody dispute, a plenary hearing must be held, providing Plaintiffs with additional procedural safeguards. Thus, this case is more similar to *Reynolds* than *Georgevich*. Accordingly, the Defendants here are not proper parties to this action under Section 1983 for declaratory or injunctive relief.[47] [48]

### B. Did the District Court Abuse its Discretion in Failing to Exercise Jurisdiction under the Declaratory Judgment Act?

Plaintiffs argue that even if the District Court determined that declaratory relief was unavailable under Section 1983, the District Court should have separately determined whether declaratory relief was available under the

---

[47] Because we determine that the judges were not proper Section 1983 defendants for declaratory or injunctive relief, we need not reach or comment upon the District Court's separate "available remedy at law" basis for denying injunctive relief.

[48] Plaintiffs argue that it was error for the District Court to dismiss the defendant judges as improper parties without specifying the "appropriate enforcement official" that would be a *proper* defendant to the action. Plaintiffs' Brief at 26. But Plaintiffs do not offer any support for the assertion that the District Court was required to assist them in this way or otherwise to litigate on their behalf by identifying possible defendants to sue.

Declaratory Judgment Act. Plaintiffs argue that their case presents an Article III case or controversy,[49] and that Article III jurisdiction and Declaratory Judgment Act jurisdiction are co-extensive.[50] Thus, Plaintiffs argue that the *In Re Justices* test does not apply to declaratory relief under the Act—that the Act offers declaratory relief that is broader than that available under Section 1983.[51] Plaintiffs further argue that the District Court erred in not considering the required factors before declining to exercise jurisdiction under the Act.[52]

The Declaratory Judgment Act states, in relevant part:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

---

[49] Like the District Court and the First Circuit in *In Re Justices*, we decline to rest dismissal of this case on Article III grounds. *See In re Justices*, 695 F.2d at 22 ("[W]e are reluctant to rest our decision directly on Article III when the case can be resolved on a nonconstitutional basis.").

[50] Plaintiffs' Brief at 28 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) and *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937), for the proposition that the phrase "case of actual controversy" in the Act refers to those "Cases" and "Controversies" that are justiciable under Article III).

[51] *Id.* at 29-30.

[52] *Id.* at 30.

sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[53]

Given "[t]he statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest," district courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."[54] Both the Supreme Court and our Court have established certain non-exhaustive factors that, in an ordinary case, guide a district court's decision to exercise jurisdiction under the Act.[55] Appellate courts review these discretionary determinations for abuse of discretion.[56]

---

[53] 28 U.S.C. § 2201(a).

[54] *Wilton*, 515 U.S. at 282, 286-87 (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)); *see also id.* at 287 ("When all is said and done . . . the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." (internal citations and quotations omitted)).

[55] *Id.* at 283, 289-90; *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 138 (3d Cir. 2014).

[56] *Wilton*, 515 U.S. at 289; s*ee also Reifer*, 751 F.3d at 140 ("*Brillhart* and *Wilton* stand for at least two broad principles: (1) that federal courts have substantial discretion to decide whether to exercise DJA jurisdiction, and (2) that this discretion is bounded and reviewable.").

The Declaratory Judgment Act does not, however, provide an independent basis for subject-matter jurisdiction; it merely defines a remedy.[57] The District Court thus properly understood that the Act does not render the state court judges appropriate defendants for declaratory relief, and the District Court properly applied the *In re Justices* test to Plaintiffs' claims for declaratory relief. Because it correctly determined that the Defendants were not properly sued in this action, it did not need to consider whether to exercise its discretion using the factors we and the Supreme Court have articulated.

---

[57] *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction."); *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (noting that the Declaratory Judgment Act "does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction"); *Ne. Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 158 (3d Cir. 1985) ("Congress did not intend the Federal Declaratory Judgment Act . . . to extend the jurisdiction of the federal courts."). We note that the Act, which dates from 1934, *see Steffel v. Thompson*, 415 U.S. 452, 466 (1974), has been in effect for all of the "appropriate defendant" decisions that we now rely on.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.