NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2294
_____

JOSE RODRIGUES,
Appellant

v.

WELLS FARGO BANK, N.A.; U.S. BANK N.A.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; WMC MORTGAGE CORP; HSBC BANK USA
NATIONAL ASSOCIATION AS TRUSTEE; GENERAL ELECTRIC COMPANY;
DOES 1-100

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cv-03845)
District Judge:  Hon. Kevin McNulty

_____

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2018

Before:  JORDAN, VANASKIE, and NYGAARD, *Circuit Judges*

(Filed: September 26, 2018)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Jose Rodrigues appeals from the District Court's dismissal of his complaint, which brought numerous federal and state law claims against General Electric Company ("GE"); WMC Mortgage Corporation ("WMC"); HSBC Bank USA National Association, as Trustee ("HSBC"); U.S. Bank, N.A. ("U.S. Bank"); Wells Fargo Bank, N.A. ("Wells Fargo"); and Mortgage Electronic Registration Systems, Inc. ("MERS"). Those claims include, but are not limited to, alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, and are premised on purported improprieties related to mortgages on Rodrigues's property in Kearny, New Jersey. For the reasons that follow, we will affirm.

## I.    BACKGROUND[1]

Rodrigues entered into a purchase mortgage contract with WMC in October 2005 (the "original mortgage"). The contract designated MERS as the sole "nominee for [WMC] and [WMC]'s successors and assigns." (App. at 74.) Later, in March 2007, Rodrigues refinanced the loan secured by the original mortgage. His new loan (the "Loan") was from Wells Fargo, and was also secured by a mortgage on his property (the "later mortgage"). Laying to rest the original mortgage, MERS certified a Satisfaction

---

[1] The facts described here are derived from allegations in Rodrigues's complaint, which we view in the light most favorable to him, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), documents attached to the complaint, and prior court decisions, of which we may take judicial notice, *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). Because we write for the parties, we include only the background information necessary to our disposition.

and Discharge of Real Estate Mortgage form, which was filed with the Register of Deeds for Hudson County, New Jersey.

After extending the Loan to Rodrigues, Wells Fargo placed the Loan into a mortgage backed securities trust (the "Trust"). Wells Fargo also assigned the Loan to two different trustees of the Trust, first to U.S. Bank in February 2009, and then to HSBC in 2013. The Loan had gone into default before those assignments, because of Rodrigues's failure to make his monthly payments. That resulted in U.S. Bank initiating foreclosure proceedings, which were ultimately dismissed for lack of prosecution in September 2013. Following that dismissal, Rodrigues commenced an action in the Chancery Division of New Jersey's Superior Court against Wells Fargo, U.S. Bank, and HSBC. He alleged that the later mortgage was void due to a chain of wrongful assignments and that the state-court defendants violated New Jersey consumer fraud and protection statutes. Rodrigues sought, among other things, to have the later mortgage canceled as being void and the Loan marked paid. The Chancery Division dismissed with prejudice the counts related to the alleged statutory violations and granted summary judgment in favor of the state-court defendants on the count alleging that the later mortgage was void. The Chancery Division explained that, regardless of the propriety of the assignments, the later mortgage remained valid and there was no equitable basis to discharge it. The Appellate Division affirmed and the New Jersey and United States Supreme Courts declined to hear Rodrigues's appeals.

After his unsuccessful suit in the Chancery Division, Rodrigues brought this action. The defendants here include not only those who were parties to the earlier suit,

3

but also GE, which had bought the now defunct WMC, and MERS. Rodrigues's claims stem from his contention that MERS was not legally capable of discharging the original mortgage, that all subsequent transfers and assignments of the underlying debt are invalid, and thus that no defendant "has [a] legal right to the mortgage[.]" (App. at 46.) The defendants filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which the District Court granted on three grounds. First, it concluded that it may have lacked jurisdiction over certain claims pursuant to the *Rooker-Feldman* doctrine. Second, it determined that New Jersey's entire controversy doctrine barred all of the complaint's claims against all of the defendants. Finally, and in the alternative, it found that Rodrigues's claims were either not cognizable or were barred by the applicable statutes of limitations. The District Court denied Rodrigues's motion for reconsideration.

Rodrigues, who proceeded pro se before the District Court, filed a pro se notice of appeal.[2]

## II.   DISCUSSION[3]

### A.   The *Rooker-Feldman* Doctrine

The District Court determined that the *Rooker-Feldman* doctrine may have deprived it of jurisdiction over some but not all of Rodrigues's claims. Although the Court did not identify which claims it thought were precluded by that doctrine, it stated

_____

[2] Rodrigues retained counsel after the parties had already fully briefed this case on appeal. We then afforded the parties the opportunity to engage in a second full round of briefing.

4

that it would lack jurisdiction over any claims seeking to re-litigate matters decided by the state-court action. We disagree that *Rooker-Feldman* stands as a jurisdictional obstacle in this case.

*Rooker-Feldman* "is a 'narrow doctrine' that 'applies only in limited circumstances.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 169 (3d Cir. 2010) (quoting *Lance v. Dennis*, 546 U.S. 459, 464-66 (2006)). It "is confined to … cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine, therefore, "does not bar suits that challenge actions or injuries underlying state court decisions—and especially those that predate entry of a state court decision—rather than the decisions themselves." *Allen v. DeBello*, 861 F.3d 433, 438 (3d Cir. 2017). Rodrigues's claims here either relate to purported injuries caused by the defendants in 2005 or 2007 in

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. The defendants contend, however, that the District Court lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. As explained below, we disagree. MERS further argues that we lack jurisdiction to entertain an appeal of the District Court's order dismissing the complaint, asserting that we can hear only Rodrigues's appeal as to the Court's denial of his motion for reconsideration because that is the only order referenced in his pro se notice of appeal. Because we construe notices of appeal liberally and exercise jurisdiction over those judgments "fairly inferred" by such notices, *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010) (citation omitted), we will review the underlying decision dismissing the complaint. Our decision to do so is only strengthened by the fact that Rodrigues filed his notice of appeal pro se.

We exercise plenary review over a district court's grant of a motion to dismiss based on Federal Rules of Civil Procedure 12(b)(1) or (b)(6). *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

relation to mortgages on the property and the Loan before the state-court action commenced, or relate to independent actions by certain defendants, such as a failure to respond to a notice of rescission. The claims do not allege injuries arising from the state-court action itself. Accordingly, the *Rooker-Feldman* doctrine does not bar Rodrigues's complaint.

B. **New Jersey's Entire Controversy Doctrine**

Although *Rooker-Feldman* does not deprive the federal courts of jurisdiction to hear Rodrigues's claims, we will affirm the District Court's determination that New Jersey's entire controversy doctrine requires dismissal of the case, at least as to those defendants that were parties to the state-court action.

New Jersey's entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (citation omitted). We have characterized the doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015) (citation omitted). The doctrine "applies in federal courts when there was a previous state-court action involving the same transaction[.]" *Id.* (quotation marks and citation omitted). Its application, however, is limited "to

6

mandatory joinder of claims[;]" it no longer applies to mandatory joinder of parties.[4]

*Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1036 (N.J. 2011); *accord Ricketti*, 775 F.3d at 614.

Each claim Rodrigues has asserted against Wells Fargo, U.S. Bank, and HSBC could have and should have been included in his state-court action against those

---

[4] The District Court erroneously held that New Jersey's entire controversy doctrine "encompasses not just claims but parties." (App. at 20.) In doing so, it appears to have cited as current an outdated version of the New Jersey court rule embodying the entire controversy doctrine. (*Compare* App. at 21 ("Non-joinder of claims *or parties* required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims[.]" (emphasis added) (citing N.J. Ct. R. 4:30A (1992)), *with* N.J. Ct. R. 4:30A (2016) ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims[.]").) Under current New Jersey court rules and binding precedent from the New Jersey Supreme Court, the entire controversy doctrine no longer requires preclusion when there was a failure to join parties in a prior action. *See Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1036 (N.J. 2011) ("Rule 4:30A was amended to limit its scope to mandatory joinder of claims." (emphasis omitted)); *see also Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 n.1 (3d Cir. 1999) ("The party joinder aspect of the [entire controversy] doctrine … has now been eliminated."). In fact, the current New Jersey rule addressing joinder of parties does not require dismissal of a successive suit for a failure to join a party in a prior action "unless the failure … was inexcusable and the right of the [non-joined] party to defend the successive action has been substantially prejudiced[.]" N.J. Ct. R. 4:5-1; *see also Ricketti*, 775 F.3d at 614 (discussing evolution of New Jersey Court Rules 4:30A and 4:5-1). Here, there has been no showing of substantial prejudice to MERS, GE, or WMC to warrant automatic preclusion in their favor.

It is, moreover, disappointing that, instead of correcting the District Court's inadvertent error, counsel for MERS, GE, and WMC pressed upon us the erroneous description of the doctrine and argued that it does "appl[y] equally to joinder of parties." (MERS Answering Br. at 16; *see also* WMC and GE Answering Br. at 12 ("New Jersey's 'entire controversy' doctrine precludes all claims and parties that a party could and should have joined in a prior case based on the same transaction.").) Those assertions appear to stand in obvious contradiction to New Jersey law and binding precedent from both our Court and the New Jersey Supreme Court. If we have somehow missed another change in the doctrine, reverting back to the form requiring joinder of parties, we invite the parties to provide the pertinent legal citations to that effect.

7

defendants. Much like the claims here, the claims in the earlier state suit "arose from the original mortgage loan in 2005, the refinancing in 2007, and the chain of assignments." (App. at 21.) Because the claims before the District Court "ar[o]se from … the same transaction or series of transactions" that were the subject of the underlying state-court action, *Wadeer*, 110 A.3d at 27 (citation omitted), the District Court correctly dismissed Rodrigues's claims as to Wells Fargo, U.S. Bank, and HSBC.

## C. Statute of Limitations[5]

Rodrigues's claims against MERS, GE, and WMC under TILA, the FDCPA, and the New Jersey Consumer Fraud Act, while not barred by the entire controversy doctrine, nonetheless fail on statute of limitations grounds, essentially for the reasons stated by the District Court.

Rodrigues's TILA claims based on an alleged right of rescission are subject to a three-year statute of limitations that runs from "the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"  15 U.S.C. § 1635(f).  That period is not subject to tolling. *Id.*; *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417-18 (1998).  Claims for money damages under TILA must be brought within one year "from the date the loan closed[.]" *In re Community Bank of N. Va.*, 622 F.3d 275, 303 (3d Cir. 2010).  Because Rodrigues's "TILA claims, by definition, relate to the

---

[5] As the District Court noted, Rodrigues's complaint contains certain purported causes of action that are simply not cognizable, including Counts 7 and 8 which are brought under the definitional section of TILA, 15 U.S.C. § 1602, Count 10 which is brought under a New Jersey criminal statute, N.J.S.A. § 2C:28-71, and Count 12 which is brought under a federal criminal statute, 15 U.S.C. § 1611.  The Court rightly dismissed those claims against all defendants without resort to a statute of limitations analysis.

8

closing of the original loan in 2005 or the refinancing on March 28, 2007[,] … [t]he TILA claims [brought in 2016] are … barred by the statute of limitations." (App. at 23.)

Rodrigues's claims under the FDCPA are subject to, at most, a three-year statute of limitations running from the date the violation occurred. *See* 15 U.S.C. § 1640 (providing for statutes of limitations ranging from one to three years depending on the circumstance). Again, because any alleged violation for which MERS, GE, or WMC could be responsible accrued no later than March 2007, Rodrigues's FDCPA claims brought in 2016 are untimely.

Rodrigues's claim under the New Jersey Consumer Fraud Act is subject to a six-year statute of limitations. N.J.S.A. 2A:14-1. That limitations period runs from the later of the time the alleged fraud occurred or the time it could have been discovered with reasonable diligence. *SASCO 1997 NI, LLC v. Zudkewich*, 767 A.2d 469, 475 (N.J. 2001). Because the alleged fraud here occurred no later than March 2007, Rodrigues's New Jersey fraud claim against MERS, GE, and WMC could only be timely if he could not have discovered with reasonable diligence the supposedly fraudulent conduct. The complaint, however, does not "articulate any basis for delayed accrual, or for tolling the statute of limitations[.]" (App. at 23.)

Accordingly, the District Court properly dismissed Rodrigues's TILA, FDCPA, and fraud claims against MERS, GE, and WMC.[6]

---

[6] Rodrigues claims, without citation to specific allegations in the complaint, that the discovery rule should delay the accrual of his claims because he "was not made aware of the underlying issues that make[] up the claims in this matter until 2015." (Sur-Reply Br. at 7-8.) The District Court was right, however, to conclude that the facts underlying

## III.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's dismissal of Rodrigues's complaint.

---

the complaint's claims could have been discovered with reasonable diligence and that Rodrigues's "[v]ague and conclusory allegations of concealment … do not pass the plausibility standard of [*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).]" (App. at 24.)