NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1455
_____

FAMILY CIVIL LIBERTIES UNION; SURENDER MALHAN, for himself and as
parent of E.M., and V.M.; ELVIN SERRANO, for himself and as parent of L.S.; ZIA
SHAIKH, for himself and as parent of M.S., S.S., and H.S.

v.

STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES,
DIVISION OF CHILD PROTECTION & PERMANENCY; LISA VON PIER; GURBIR
S. GREWAL, In his official capacity; RICHARD FEDERICI; DAVID C. KATZ;
DONALD KESSLER; PEACEFUL HEALING, LLC; MARCELLA MATOS WILSON;
CHESTER SIGAFOOS; JOHN DOES 1-10; SOARING HEIGHTS CHARTER
SCHOOL
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-18-cv-02597)
District Judge: Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 2, 2020

Before:  SHWARTZ, PHIPPS and FISHER, *Circuit Judges*.

(Filed: November 18, 2020)
_____
OPINION[*]
_____

_____

   [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FISHER, *Circuit Judge*.

This appeal confronts us, for the third time, with a "longstanding, multifront battle" over child custody determinations in New Jersey.[1] In the current round of litigation, the Family Civil Liberties Union and its co-appellants assert a battery of claims against over a dozen state and private parties. Some of these claims were dismissed because they have already been fully litigated without success. The rest the District Court dismissed because appellants failed to state a claim, or because appellees are not proper defendants or are immune. We conclude that the dismissals were proper. Therefore, we will affirm.[2]

To begin, co-appellants Surender Malhan and Zia Shaikh may not relitigate their systemic due process claim (Count I), which they pursued unsuccessfully in prior lawsuits. Under res judicata, claims are precluded if (1) a court renders "a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit [is filed] based on the same cause of action."[3] "[W]e take a broad view of what constitutes the same cause of action," focusing on "the essential similarity" of the

---

[1] App. 6. For the first two appeals, *see Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017); *Hagberg v. New Jersey*, 751 F. App'x 281 (3d Cir. 2018).

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343. We have jurisdiction under 28 U.S.C. § 1291. "Our review of the grant of a motion to dismiss is plenary. However, to the extent the denial of declaratory relief was discretionary, we review for abuse of discretion." *Allen*, 861 F.3d at 438 (citations omitted).

[3] *In re Healthcare Real Estate Partners, LLC*, 941 F.3d 64, 72 (3d Cir. 2019).

2

underlying factual allegations.[4] Here, Malhan and Shaikh litigated their prior actions to final judgment.[5] The named defendants included the State of New Jersey, its Attorney General, and several family court judges—equivalent to the defendants named here.[6] Finally, the due process claims advanced here are based on the same cause of action as the earlier lawsuits. Some additional facts are pled this time, but the key allegations concerning New Jersey child custody procedures are essentially similar: in the first lawsuit, the absence of "adequate notice, the right to counsel, or . . . an opportunity to present evidence or cross-examine,"[7] and in the current lawsuit, long delays before parents receive "adequate notice, an opportunity to present evidence . . . , an opportunity to contest the allegations, and a written decision based on competent evidence."[8] We conclude that all three conditions for res judicata are met, and Malhan and Shaikh are

---

[4] *Davis v. Wells Fargo*, 824 F.3d 333, 342 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)).

[5] *Allen*, 861 F.3d at 444; *see also Hagberg*, 751 F. App'x at 284 (alleging deprivation of rights without a hearing and failure to provide counsel to indigent parents).

[6] Here, appellants name an agency of the State of New Jersey rather than the State itself. The individual judges are also different, as is the holder of the office of Attorney General. To the extent these parties are not "the same" as those named in the prior actions, they are fairly considered "privies" for purposes of a broad constitutional challenge. *See Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004) ("Privity is . . . used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." (citation and internal quotation marks omitted)); *see also Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991) ("[A] lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action." (citation omitted)).

[7] *Allen*, 861 F.3d at 436.

[8] App. 200.

3

barred from relitigating their systemic due process challenge.

Of the claims that remain, none were improperly dismissed. Right off the bat, several claims faltered because appellees are immune or are not proper defendants. For instance, the Division of Child Protection and Permanency (DCPP) of the New Jersey Department of Children and Families (named as a defendant in Counts I and II) is protected by sovereign immunity. "[T]he Eleventh Amendment . . . render[s] states—and, by extension, state agencies . . . —generally immune from suit by private parties in federal court."[9] When "a state agency . . . is named as defendant, that too is considered a suit against the state"[10] especially if the "relief sought . . . is in fact against the sovereign."[11] Here, DCPP is a state agency. Because the allegations in the operative complaint concern its official acts, including depriving parents the custody of their children, the state is the real party in interest. Sovereign immunity therefore extends to DCPP, and the District Court correctly dismissed all claims against it.

Likewise, the 42 U.S.C. § 1983 claims against state court Judges David Katz, Donald Kessler, and Marcella Matos Wilson (Counts I, II, and V) were also correctly dismissed. A "judge who acts as a neutral and impartial arbiter of a statute is not a proper defendant to a Section 1983 [claim] challenging the constitutionality of the statute."[12]

---

[9] *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).
[10] *Everett v. Schramm*, 772 F.2d 1114, 1118 (3d Cir. 1985).
[11] *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963).
[12] *Allen*, 861 F.3d at 440.

Here, Judges Katz, Kessler, and Wilson were acting as impartial adjudicators. They did not have "any right to initiate [custody] actions," nor were they "given any administrative function."[13] Accordingly, such judges are not proper defendants under § 1983.[14]

Next, the defamation claims against appellees Richard Federici and Peaceful Healing (Counts III and IV) were correctly dismissed under New Jersey's common law "litigation privilege."[15] "[A]ny communication (1) made in judicial . . . proceedings; (2) by litigants or other participants . . . (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action" is privileged.[16] As part of custody proceedings, Federici and Peaceful Healing were court-appointed to provide counseling services and supervise visitation sessions. Thus, their letters to the family court were in context of litigation, "logically related to the custody dispute being adjudicated,"[17] and protected by the litigation privilege. Therefore, the District Court properly dismissed these claims.

Furthermore, we affirm the District Court's dismissal of the retaliation claims against Peaceful Healing, LLC (Count V), and the claims against Chester Sigafoos and

---

[13] *Id.* at 442. In this context, "administrative function" refers to responsibilities such as investigation and reporting. *See Sup. Ct. of Va. v. Consumers Union*, 446 U.S. 719, 739 (1980). Here, of course, the judges' responsibilities were adjudicative, not administrative. *Allen*, 861 F.3d at 442.

[14] *Allen*, 861 F.3d at 442.

[15] *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 319 (3d Cir. 2014) (citing *Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426, 437 (N.J. 2006)).

[16] *Id.* (quoting *Loigman*, 889 A.2d at 437).

[17] App. 13.

Lisa Von Pier (Counts I and II). "It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."[18] The appellants failed to raise any arguments concerning these specific dismissals in their opening brief, inconsistent with Fed. R. App. P. 28(a)(8)(A), and thereby, waiving any appellate review on these claims.

With the foregoing claims dismissed, just three claims remained to be adjudicated. The District Court correctly concluded that none stated a claim upon which relief may be granted.

First, in Count I, appellants sought declaratory and injunctive relief on their systemic due process claim, with New Jersey's Attorney General[19] as the remaining defendant. We agree with the District Court that the requested relief—to declare that the state's custody-related practices "violate[] the Due Process Clause," and to enjoin the state from "failing . . . to provide parents with adequate notice and a meaningful hearing at a meaningful time"[20]—is vague and unworkable. The relief the appellants seek would

---

[18] *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (explaining that under what is now Federal Rule of Appellate Procedure 28(a)(8), "appellants are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief").

[19] The appellants did not properly state how at all the AG or his staff are involved in the custody disputes, and merely state that they "are presumably officials tasked with administration and enforcing New Jersey law." App. 105.

[20] App. 204.

result in "nothing less than an ongoing federal audit of state . . . proceedings."[21] Accordingly, the District Court properly dismissed this claim.

Second, in Count II, appellants claimed that their First Amendment rights were violated because they were not allowed to make audio or video recordings of their supervised visits and interactions with their children. But this Court has not previously recognized the right of a parent, without full custody of a child, to record supervised visits (for later use in child custody proceedings), and appellants do not adequately develop a rationale for recognizing such a right. Thus, this claim was properly dismissed.

Third and finally, in Count VI, Malhan asserted a § 1983 claim against Soaring Heights Charter School. A charter school, a municipal entity,[22] "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."[23] Here, Soaring Heights, upon the advice of its counsel,[24] did not allow Malhan to pick up his children from the school. Under New

---

[21] *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974).

[22] In New Jersey, charter schools are part of the state's public education program. *See* N.J. Stat. Ann. § 18A:36A-2 (West 1996). They "operate[] under a charter granted by the [State's] commissioner" and their "board of trustees [are] deemed to be public agents authorized by the State Board of Education." N.J. Stat. Ann. § 18A:36A-3 (West 1996).

[23] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

[24] Counsel gave this advice to the school because the family court order stated that Malhan is to have "parenting time with [his] children . . . after school" but that the "[t]ransfers of the children . . . will continue to take place at the Bayonne Police Station." App. 27.

Jersey law, the counsel did not have the "final policymaking authority" for Soaring Heights.[25] Because Soaring Heights only acted upon its counsel's advice and not based on a government policy or custom, the District Court properly found that the school is not liable under *Monell* standards.

For these reasons, we will affirm.

---

[25] *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered," which is "a question of state law."); *see also* N.J. Stat. Ann. § 18A:36A-3(a) ("The board of trustees . . . shall be deemed to be public agents authorized by the State Board of Education to supervise and control the charter school."); N.J. Stat. Ann. § 18A:36A-14(a) ("The board of trustees of a charter school shall have the authority to decide matters related to the operations of the school . . . .").