**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1567
_____

BANK OF HOPE, as successor to Wilshire Bank

v.

MIYE CHON, also known as Karen Chon;
SUK JOON RYU, also known as James S. Ryu;
TAE JONG KIM; BERGENFIELD BAGEL & CAFE, doing
business as Cafe Clair;
MAYWOOD BAGEL INC.; UB'S PIZZA & BAGEL INC.;
UB's BAGEL & CAFE INC.; UBK BAGELS CORP.,
doing business as Franklin Bagels & Cafe

SUK JOON RYU, a/k/a James S. Ryu, Third Party Plaintiff

v.

KWON HO JUNG; JAE WHAN YOO; STEVEN S. KOH;
LISA PAI, Third Party Defendants

Suk Joon Ryu,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-14-cv-01770)
District Judge: Honorable Jose L. Linares (Retired)
_____

Argued June 4, 2019

Before: JORDAN, BIBAS, and MATEY, *Circuit Judges*

(Filed: September 17, 2019)
_____

David V. Dzara
Stephen G. Harvey   [ARGUED]
Steve Harvey Law
1880 John F. Kennedy Boulevard
Suite 1715
Philadelphia, PA 19103
        *Counsel for Appellant*

Michael M. Yi        [ARGUED]
Lee Anav Chung White Kim Ruger & Richter
99 Madison Avenue
8th Floor
New York, NY 10016
        *Counsel for Appellee Bank of Hope*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Courts have inherent power to keep their proceedings fair and orderly. They can use that power to order the parties before them not to talk with each other, the press, and the public. But that power comes with limits. The First Amendment requires that we tread carefully when we restrict speech. A court must thus explain why restricting speech advances a substantial government interest, consider less-restrictive alternatives, and ensure that any restriction does not sweep too broadly.

Here, Bank of Hope sued Suk Joon Ryu for embezzling money from its customers. As the case went on, Ryu began sending letters to the Bank's shareholders. Those letters alleged that the Bank's claims were baseless and were ruining his reputation. He hoped that the letters would pressure the Bank to settle. The Bank then asked the magistrate judge to ban Ryu from contacting its shareholders. The magistrate judge agreed, and the District Court affirmed. But the District Court marshaled no evidence that this restriction on speech was needed to protect this trial's fairness and integrity. And it considered no less-restrictive alternatives. So its order violates Ryu's First Amendment rights, and we will vacate and remand.

# I. BACKGROUND

## A. The Bank accused Ryu of embezzlement

Ryu helped found Wilshire Bank and worked there for decades as a high-level executive. Things changed in 2013: Wilshire Bank went through a series of mergers and eventually became Bank of Hope. That same year, Ryu left to work for another bank.

About a year later, the Bank found out that one of its employees, Miye Chon, had stolen money from dozens of customers. She had managed to embezzle more than a million dollars. The Bank fired her, and she later pleaded guilty.

Chon tried to take Ryu down with her. She alleged that Ryu had taken part in the embezzlement and taken a sizable cut of the proceeds. The Bank believed her and jumped into action: It froze Ryu's personal account at the Bank. It shared its suspicions with Ryu's new employer, which then fired him. And it sued both Chon and Ryu to recover the embezzled funds.

Ryu denied any wrongdoing, and the government never charged him. He also filed counterclaims against the Bank for various torts and breach of contract. Thus began this litigation.

## B. The District Court restrained Ryu's speech

Litigation can take a long time. Ryu grew impatient, so he took matters into his own hands. He sent a letter to the Bank's chief executive, denying any role in the embezzlement and dis-

4

paraging the evidence against him. He claimed that the litigation was ruining his professional reputation and had pained members of his family. And he advised the Bank to settle.

Ryu heard only radio silence, but that did not stop him. Almost a year later, he sent a longer letter to the same executive, similarly blaming the Bank for his and his family's maladies and financial straits. The second letter came with a threat: if the Bank did not settle, he would start lobbying its shareholders.

Once again, his letter changed nothing. So Ryu followed through and wrote to dozens of institutional shareholders. These letters accused the Bank of a years-long campaign to defame him and hurt his family. And they warned that the lawsuit would sap shareholders' confidence in the Bank and undercut its value. Ryu hoped that the letters would pressure the Bank to settle on favorable terms.

These letters irked the Bank, so it sent Ryu a cease-and-desist letter. And it told the District Court that "Ryu [was] attempting wrongfully and unlawfully to coerce Bank of Hope into making a settlement payment." App. 50. The magistrate judge then ordered Ryu not to contact the Bank's shareholders "pending further briefing and decisions on these issues." App. 70. After more briefing, the magistrate judge finalized that ban in another order.

Ryu then appealed to the District Court, but to no avail. The District Court deferred to the magistrate judge's recommendation and affirmed. Ryu now appeals to us.

## II.  THE DISTRICT COURT'S ORDER IS A COLLATERAL ORDER

We must first decide whether we have appellate jurisdiction. Our review is generally limited to "final decisions of the district courts." 28 U.S.C. § 1291. But we make a narrow exception for collateral orders. To be collateral, an order must satisfy three criteria. It must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotation marks omitted). Because the District Court's order meets all three criteria, we have appellate jurisdiction.

First, the District Court conclusively determined Ryu's ability to speak to the shareholders. It barred him from contacting the Bank or its shareholders and said that he could speak with the Bank only through his counsel. And it affirmed the magistrate judge's second order without change. Nothing in this order suggests that it was non-final, conditioned on future events, or subject to revision. *Cf. Lusardi v. Xerox Corp.*, 747 F.2d 174, 177–78 (3d Cir. 1984) (finding an order non-final because it was expressly conditional and could be revisited).

Yet the Bank makes much ado about one line in the magistrate judge's second order. The magistrate judge ordered Ryu "to cease such communications *pending further order from the Court.*" App. 227 (emphasis added). But that is not enough to escape the collateral-order doctrine.

To start, we review the District Court's order, not that of the magistrate judge. But even if we consider the latter, the

6

Bank's argument still fails because it ignores context. The magistrate judge's *original* order was entered "for the short period of time that it will take to develop the record and fully brief these issues." App 70. That order was tentative, but Ryu did not appeal it. Nor could he. Instead, he appealed the District Court's order affirming the magistrate judge's *second* order, which was entered months later, after detailed briefing. That order conclusively "precluded" him from contacting the shareholders. App. 224.

And an order can be collateral even if the lower court retains "discretionary power to reopen [its] ruling." *United States v. Bertoli*, 994 F.2d 1002, 1011 (3d Cir. 1993). A contrary rule would swallow up the collateral-order doctrine. Collateral orders are by definition not final, so courts usually can revisit them. Leaving this door ajar does not remove an order from the doctrine's scope. If it did, almost no order would be collateral. That cannot be. In short, the doctrine's first requirement is met.

Second, the District Court's order resolved an important, non-merits issue. The order was important: It imposed a prior restraint on speech. And it weighed Ryu's First Amendment rights against the Court's inherent power to manage proceedings. The order was also unrelated to the merits. The Bank had sued Ryu to recover the embezzled funds, not to keep him from writing to its shareholders. And Ryu's counterclaims sound in tort and contract. So the second requirement is also met.

Third, the District Court's order will be effectively unreviewable after judgment. If Ryu prevails, he cannot appeal from a favorable judgment. And if he loses, we could strike down the restraint, but the damage will be done. Ryu wants to

write to the shareholders *now* to get a favorable settlement. A victory after judgment would be empty; the reviewing court could not turn back the clock and let Ryu send his letters in time. "[R]eview postponed will, in effect, be review denied." *Zosky v. Boyer*, 856 F.2d 554, 561 (3d Cir. 1988), *abrogated on other grounds by Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000). So the third requirement is met too. The collateral-order doctrine applies, and we have appellate jurisdiction.

## III. EVEN IF RYU'S SPEECH WAS COMMERCIAL, THE COURT ERRED BY RESTRAINING HIS SPEECH

The District Court forbade Ryu to speak with the Bank's shareholders. Such prior restraints on speech are presumptively unconstitutional and subject to strict scrutiny. *See N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam). A judgment "deeply etched in our law" underlies that rule: "a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975).

But the Bank argues that the prior-restraint doctrine does not apply. It claims instead that our review should be less vigorous because Ryu's letters are commercial speech. True enough, the "traditional prior restraint doctrine may not apply to [commercial speech]." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 571 n.13 (1980). But neither the Supreme Court nor this Court has ever found that

speech like Ryu's letters was commercial, so whether the commercial-speech doctrine plays any role here is doubtful.[†] We need not decide this issue, however, because the District Court's order fails any level of scrutiny.

If the Bank were right, and Ryu's speech were commercial, the prior-restraint doctrine likely would not apply. Even so, the District Court's order could not stand, because it fails even the less-rigorous form of review that governs limits on commercial speech.

We assess limits on commercial speech using a multi-part test. This one comes from *Central Hudson* and has four parts. *Cent. Hudson*, 447 U.S. at 566. First, speech that is misleading or concerns illegal activity is unprotected. *Id.* But if the speech

---

[†] Commercial speech is "usually defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). The First Amendment protects this speech because "the free flow of commercial information" lets the public make informed economic decisions. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 763 (1976). Whether First Amendment scrutiny applies largely depends on three factors: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990). The Bank hangs its hat on the third factor: Ryu had an economic motivation for sending the letters. Ryu concedes that he sent the letters in part to prompt a favorable settlement. But the Bank cites no case showing that this fact *alone* is enough to make his speech commercial.

is lawful and not misleading, the restriction must satisfy three more prongs to survive. Second, the government must have a substantial interest in regulating the speech. *Id.* Third, the restriction must directly advance that interest. *Id.* Fourth, the restriction must be no broader than necessary. *Id.*

## A.  Ryu's speech is neither related to illegal activity nor misleading

The first prong does not really fit this case. Ryu has never threatened to commit any crime or tort, and the Bank does not claim otherwise. His speech thus does not relate to illegal activity. This would be a different case if the letters amounted to blackmail.

Nor has Ryu made factually false statements. The Bank disputes their accuracy, but that boils down to the underlying merits of whether the Bank in fact defamed him or breached its contract. And we normally ask about the misleading nature of speech in the context of advertisements and the like, which often make factual claims that are "easily verifiable." *Va. Bd. of Pharmacy*, 425 U.S. at 772 n.24. Here, by contrast, we cannot ourselves disentangle the truth of Ryu's letters from the merits of the lawsuit about which he speaks. Nor did the District Court make any findings to this effect. So we cannot say that this speech is deceptive.

## B.  The District Court had a substantial interest in regulating Ryu's speech

At the second prong, we look for a substantial governmental interest. The District Court pointed to several, but only one in particular is legitimate. The Court restrained Ryu's speech

in part "to protect the integrity of this litigation." App. 240. That part of its reasoning was on sound footing. Courts have a substantial interest in ensuring the fairness and integrity of the proceedings before them. Indeed, they *must* give the parties a fair trial in both civil and criminal cases; failing to do so violates due process. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 552–53 (1976); *Bailey v. Sys. Innovation Inc.*, 852 F.2d 93, 98 (3d Cir. 1988).

"Courts of justice are [thus] vested, by their very creation, with power to impose silence, respect, and decorum, in their presence." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821)). That inherent power is part of courts' discretionary authority to manage their cases. *Id.*

But the order did not rest solely on protecting the integrity of this case. Both the District Court and the magistrate judge expressed a broader concern. Lawyers usually cannot speak directly to opposing parties. Model Rules of Prof'l Conduct r. 4.2 (Am. Bar Ass'n 2016). Yet Ryu, a party represented by counsel, wrote to the Bank's shareholders. The magistrate judge thought that "[i]t would eviscerate that fundamental principle to allow [Ryu] to do what his counsel cannot." App. 222. And the District Court deferred to this conclusion. The magistrate judge cited only a single authority for this proposition: "the spirit of" Federal Rule of Civil Procedure 1. App. 222–23.

Yet that rule says nothing about ex parte contacts. It merely recites the purpose of the Federal Rules, calling in the most general terms for making litigation "just, speedy, and inexpensive." Fed. R. Civ. P. 1.

More importantly, we find no authority for a court to police the Federal Rules, let alone their spirit, by restricting speech. *See* 28 U.S.C. § 2072(b) (the Federal Rules "shall not abridge … or modify any substantive right[s]"). The only substantial interest that was before the Court, as far as we can see, was in ensuring the fairness and integrity of a particular judicial proceeding. Interests that are untethered from that particular proceeding are not enough.

In short, the District Court had the power to impose a restraint. And it had a substantial interest in doing so.

### C. The District Court marshaled no evidence that the restriction on Ryu's speech would advance that interest

We next move to *Central Hudson*'s third prong, which requires the court to ensure that its restriction directly advances that interest. The District Court thought that its restriction did that. It worried that Ryu's letters would disturb its proceedings by forcing the Bank to drop its case and accept an unfair settlement. The magistrate judge fretted that Ryu was trying "to obtain a strategic advantage" by talking directly to the Bank's shareholders, bypassing its counsel. App. 222. Preventing such communications, it thought, would put the parties back on equal footing.

But "mere speculation or conjecture" is not enough to restrict commercial speech. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). Instead, the Court needed to ensure "that the harms it recite[d] [were] real and that its restrictions [would] in fact alleviate them to a material degree." *Id.* at 771. Here, the District Court and the magistrate judge found no facts suggesting that

Ryu's letters would coerce the Bank into an unfavorable settlement. The Bank's executives never declared or testified to that. Nor was there any evidence that the Bank's shareholders influenced the Bank's litigation strategies. We see no evidence that could justify this restriction on speech.

**D. The District Court failed to consider less-restrictive alternatives**

Another problem is with tailoring. If a court can "achieve its interests in a manner that does not restrict speech, or that restricts less speech, [it] must do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002). But neither the magistrate judge nor the District Court considered a single alternative to this restraint on speech.

And not for a want of options. The Court could have limited the time for which the restraint would apply. It could have barred Ryu from making only certain representations to shareholders, instead of a blanket ban. It could have supervised settlement discussions to guard against undue influence. If the case went to trial, it could have enlarged the jury pool and used cautionary jury instructions to remove any lingering doubts about fairness. In short, the District Court had many options. Before restricting Ryu's speech, it had to consider at least some of them and find them inadequate.

We do not question courts' longstanding authority to regulate the parties before them and to issue orders to promote the fairness and integrity of that litigation. But "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Before restraining

speech, courts must review the record for evidence that a speech restriction will make that particular lawsuit fairer and consider other, less-intrusive alternatives. No matter what kind of scrutiny applies, courts must always "consider[ ] the 'fit' between [their] ends and the means chosen to accomplish [them]." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 486 (1995) (internal quotation marks omitted). Because the District Court made no such finding here, its order cannot survive even intermediate scrutiny.

\* \* \* \* \*

The District Court's concerns were understandable. We must vigilantly guard against efforts to undermine the judicial process. But the antidote usually lies in more speech and less government intrusion. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 498 (1996).

The First Amendment requires courts to tread warily when restricting litigants' speech. They may do so only when necessary to protect the fairness or integrity of the particular litigation before them. And they must first find that the speech risks harming that litigation, that restricting the speech will alleviate that particular harm, and that less-restrictive alternatives will not suffice. The District Court here made no such findings and considered no alternatives. So we will vacate and remand for further proceedings.

14