NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2571
_____

PAUL ARGEN;
SURENDER MALHAN,
Appellants

v.

ATTORNEY GENERAL NEW JERSEY;
HON. DAVID KATZ

_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 2-18-cv-00963
District Judge:  Honorable Susan D. Wigenton
_____

Argued June 15, 2022

Before: HARDIMAN, SMITH, and FISHER, *Circuit Judges*

(Filed  August 16, 2022)

Paul A. Clark          [ARGUED]
Suite 1N
10 Huron Avenue
Jersey City, NJ 07306
        *Counsel for Appellants*

Brett J. Haroldson
Robert J. McGuire   [ARGUED]
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625
        *Counsel for Appellees*

———————————————

OPINION[*]

———————————————

SMITH, *Circuit Judge*.

Surender Malhan, a party to a New Jersey family court proceeding, and Paul Argen, a member of the media who is prevented by a 2015 family court gag order from interviewing Malhan concerning certain aspects of the proceeding, appeal the District Court's dismissal of their challenges to the gag order on *Younger* abstention grounds. We will affirm dismissal of Malhan's claim as precluded under the doctrine of *res judicata*.[1] As for Argen, because the *Younger* doctrine does not extend to him, we will vacate dismissal of his claim and remand it for further proceedings consistent with this opinion.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] *See Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009) ("We may affirm the District Court on any grounds supported by the record." (citation and quotation marks omitted)).

I

Amid long-running and acrimonious divorce and child custody proceedings,

Malhan's putative ex-wife sought a gag order from the family court to protect her and

Malhan's minor children from potentially damaging public scrutiny. *Nichols v. Sivilli*,

No. 14-3821, 2014 WL 7332020, at *1 (D.N.J. Dec. 19, 2014). Then-presiding Judge

Nancy Sivilli granted the requested order, which broadly prohibited Malhan and his

putative ex-wife from discussing the proceeding online or with the press. *Id.* at *1–*2.

Subsequently, in separate federal cases not directly relevant to the case on appeal here,

two members of the media challenged Judge Sivilli's order on First Amendment right-of-

access grounds. Both challenges were eventually abandoned.[2]

In 2015, after Judge Sivilli recused herself, her successor, Judge Donald Kessler,

held a hearing to evaluate the appropriateness of Judge Sivilli's gag order. Judge Kessler

stated that he would want to "narrowly tailor" any gag order, Plaintiff's App'x 95, but

that the record of the proceedings at that point were insufficient to allow him to do so.

Accordingly, he ordered both Malhan and his putative ex-wife to work with a court-

appointed psychologist to evaluate how the children might be adversely impacted by

publicity relating to their parents' dispute.

---

[2] *Allen v. Chell*, D.N.J. No. 15-3519, Dkt. 19, at 2 (May 9, 2016) (dismissing Karl Hagberg's challenge because "Judge Sivilli's gag order ha[d] been 'largely vacated'"); *Allen v. DeBello*, 3d Cir. No. 16-2644, Allen's Opening Br. (Aug. 1, 2016) (failing to brief the dismissal of Hagberg's challenge); *Nichols v. Sivilli*, D.N.J. No. 14-3821, Dkt. 47 (Dec. 6, 2016) (granting voluntary dismissal of challenge by Paul Nichols, who had passed away).

To preserve the status quo, and choosing to "err on the side of caution to protect [the children's] best interest," *id.*, Judge Kessler entered a 2015 gag order that superseded the one that had been entered by Judge Sivilli. It read:

> All parties are hereby restrained and enjoined from speaking with, appearing for an interview, or otherwise discussing any custody information to any reporters, journalists, newscasters or other news media employees or from posting any blogs or information not previously posted or disseminated relating to the children or any custody issue in this case *pending a further hearing*.

*Id.* at 61 (emphasis added).

Judge Kessler entered the gag order, apparently on a *sua sponte* basis, even though he suggested that Malhan's putative ex-wife had not carried her "burden of proof" on the question of whether a gag order was necessary. *Id.* at 94. He explained that he was entering the gag order against both parties to ensure that "no one's making a decision that they later regret"—"hurting the child [when t]hey didn't mean for it to happen[.]" *Id.* at 95.

The 2015 gag order remains in effect to this day. As Malhan would later admit to the District Court, in the nearly three years following Judge Kessler's entry of the gag order, he never cooperated with the ordered psychological evaluation. District Court Dkt. 18, ¶ 4 (Apr. 18, 2018) (informing the District Court that Malhan's expert was "unable to offer [the ordered] expert opinion").

Instead, in 2018, Malhan and Argen sought to set aside the 2015 gag order by filing a federal lawsuit against Judge Kessler and the Attorney General of New Jersey. (Because Malhan would successfully move to recuse Judge Kessler and his successor, on the basis that they were conflicted as adverse parties to him in federal litigation, we will

4

refer to the judicial defendant hereinafter as "the family court defendant."). Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, Malhan and Argen sought a declaration that the 2015 gag order violated the First Amendment and an injunction prohibiting its enforcement against Malhan. Malhan claimed a right to speak; Argen claimed a right to listen.

Defendants moved for dismissal, which the District Court denied in part and granted in part. After determining that abstention was inappropriate, the District Court concluded that the family court defendant was properly subject to suit. By contrast, because Plaintiffs failed to implicate the Attorney General in the enforcement of the gag order, the District Court dismissed the Attorney General from the litigation. Finally, the District Court dismissed Plaintiffs' request for injunctive relief against the family court defendant as barred by Section 1983, although it concluded that Plaintiffs' declaratory relief claim could proceed. Subsequently, in February 2020, Plaintiffs filed an interlocutory appeal from the District Court's denial of injunctive relief.

In July 2020, before we affirmed the District Court's dismissal of Plaintiffs' injunctive relief claim, *see Argen v. Katz*, 821 F. App'x 104, 104 (3d Cir. 2020), Malhan alone filed a second lawsuit challenging the 2015 gag order. Although the 2020 Complaint described new occurrences that had taken place after Plaintiffs filed their 2018 Complaint, the later-in-time Complaint concerned the same 2015 gag order in the same family court proceeding that was challenged in the earlier-in-time Complaint. *E.g.*, *Malhan v. Katz*, D.N.J. No. 20-8955, Dkt. 1, ¶¶ 76–77, 81 (describing 2015 gag order as having remained "in effect" for "five years").

5

In October 2020, the District Court dismissed Malhan's 2020 Complaint with prejudice for reasons not relevant to this appeal,[3] and in June 2021, we affirmed. *Malhan v. Katz*, 850 F. App'x 838, 838 (3d Cir. 2021). Shortly thereafter, in Plaintiffs' case here, the District Court reconsidered the issue of *Younger* abstention[4] and concluded that it was required to abstain from hearing both Argen's and Malhan's challenges to the 2015 gag order. Thus, it dismissed the claims raised by both Argen and Malhan in their 2018 Complaint.

This appeal followed.[5]

## II

We must first determine Defendants' amenability to suit. With respect to Plaintiffs' claims against the Attorney General, we agree with the District Court that Plaintiffs provided only a "generalized statement of the Attorney General's duties as attorney for the State," *Argen v. Kessler*, No. 18-963, 2018 WL 4676046, at *11 (D.N.J.

---

[3] Malhan has not challenged the manner of the District Court's dismissal. *See FTC v. AbbVie, Inc.*, 976 F.3d 327, 381 (3d Cir. 2020) ("Arguments not briefed are forfeited on appeal.").

[4] Named for *Younger v. Harris*, 401 U.S. 37 (1971). The District Court concluded that abstention was required under *Younger* based on an intervening articulation of the doctrine we issued not-precedentially in 2020. *Argen v. Katz*, No. 18-963, 2021 WL 2850427, at *2–3 (D.N.J. July 8, 2021) (citing *Silver v. Ct. of Common Pleas of Allegheny Cnty.*, 802 F. App'x 55 (3d Cir. 2020)).

[5] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review dismissals pursuant to the *Younger* abstention doctrine *de novo*. *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 890 (3d Cir. 2022) (citation omitted).

Sept. 28, 2018), without allegations implicating him in the enforcement of the gag order.[6]

Thus, we conclude that the Attorney General is "the wrong defendant," *cf. Williams v. Army & Air Force Exch. Serv.*, 830 F.2d 27, 28 (3d Cir. 1987),[7] and will affirm the District Court's dismissal of the Attorney General from this litigation.

We agree with Plaintiffs, however, that the family court judge is a proper defendant for Argen's declaratory relief claim. The doctrine of judicial immunity does not bar Argen's claims because a judge's crafting of a gag order is administrative in character and concerns a "non-merits issue," *see Bank of Hope v. Chon*, 938 F.3d 389, 392, 394 (3d Cir. 2019) (holding that courts have inherent power to "keep their proceedings fair and orderly" through measures such as gag orders), and thus it is not purely an exercise of neutral adjudication. In turn, a judge who makes and enforces a

---

[6] The only paragraph in Plaintiffs' Complaint concerning the Attorney General's involvement is its statement that the "Attorney General's Office represented all of the judges [in *Nichols v. Sivilli*] and opposed [a motion to substitute the family court defendant]." *Argen v. Katz*, D.N.J. No. 18-963, Dkt. 1, ¶ 41 (Jan. 23, 2018). This contention does not amount to a plausible statement that the Attorney General is responsible for enforcing the 2015 gag order.

Were we to construe Plaintiffs' Complaint as incorporating documents they filed afterwards—specifically, a transcript of the hearing Judge Kessler conducted before entering the 2015 gag order—we would note that the transcript contradicts Plaintiffs' position. The Attorney General's representative stated at the hearing that the Attorney General took "absolutely no position on the gag order." *Argen v. Katz*, D.N.J. No. 18-963, Dkt. 4-4, at 23 (Jan. 24, 2018); *see Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[A] document integral to or explicitly relied on in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (cleaned up)).

[7] *Cf. Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980) (noting that under Ex parte *Young* a state official is a proper defendant if the official "'has some connection with the enforcement of the [complained of] act'" (quoting 209 U.S. 123, 157 (1908))).

rule of an administrative character "can be sued under Section 1983 for declaratory . . . relief."[8]  *Allen v. DeBello*, 861 F.3d 433, 440 (3d Cir. 2017).

We decline to construe judicial immunity too broadly so that it would be impossible to bring a federal challenge to a state court judge's rule of his "own creation." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 533 (2021) (referring to *Pulliam v. Allen*, 466 U.S. 522, 526 (1984)).  Our dissenting colleague expresses the understandable concern that "allow[ing] a § 1983 suit against the family court judge disincentivizes litigants from resolving their grievances through the normal process: appeal in the state courts." But we disagree that policy considerations allow us to apply judicial immunity in this case, for reasons we will explain.

---

[8] We do not disagree with our dissenting colleague that "judges frequently exercise discretion when adjudicating cases."  We merely conclude that, in the unique circumstance presented here involving a family court judge's *sua sponte* entry of a gag order against both parties to protect the children from the unintended consequences of their parents' actions, the judge's action was not purely an adjudication of requests presented by the parties.

By contrast, when we have applied judicial immunity, it has been in cases involving challenges to quintessentially adjudicative actions such as a judge's handling of witness presentation and admission of evidence, in a case involving Malhan albeit not-precedentially, *see Malhan v. Katz*, 830 F. App'x 369, 370 (3d Cir. 2020); a judge's imposition of involuntary commitment, *see Brandon E.* ex rel. *Listenbee v. Reynolds*, 201 F.3d 194, 195 (3d Cir. 2000); and a judge's decision whether to grant an evidentiary hearing, *see Allen*, 861 F.3d at 437 (noting action seeking to require judicial defendants to, "among other things, provide a plenary hearing within ten days to any parent who has his right to the care, custody, and control of his children reduced through state action").

First, we observe that the record before us is unclear on the question of whether Argen, as a non-party, could have sought relief in the family courts.[9] In any event, when we were presented in the *Younger* abstention context with a similar issue concerning the federal courts' role in hearing challenges to state-court proceedings, we did not "imply[] a duty [on the non-party's part] to exhaust all available state process [before] seek[ing] relief [on its First Amendment right-of-access claim] . . . from a federal court."[10] *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 843 (3d Cir. 1996).

Second, we note that Congress in amending Section 1983 limited but did not eliminate the availability of injunctive relief against state judges—and "implicitly recognize[d] that declaratory relief is available in some circumstances," *Allen*, 861 F.3d at 439—in response to the Supreme Court's ruling in *Pulliam*. In *Pulliam*, the Court had held that there is no common law doctrine of "absolute judicial immunity from prospective [injunctive] relief," 466 U.S. at 536, nor evidence of Congressional intent "to limit the injunctive relief available under § 1983," *id.* at 540. Because Congress in responding to *Pulliam* did not eliminate or otherwise limit the availability of declaratory relief against state judges under Section 1983, we will apply "Congress's scheme" and

---

[9] *See generally* N.J. CT. R. 5:3-2(a) ("[T]he [family] court, in its discretion, may on its own or *party's* motion direct that any proceeding or severable part thereof involving the welfare or status of a child be conducted in private." (emphasis added)).

[10] We note, too, that when federal courts enter gag orders, we do not always require federal litigants to wait for a final judgment to challenge such orders on First Amendment grounds. *Bank of Hope*, 938 F.3d at 394 (holding that the collateral-order doctrine applied to challenges to the district court gag order at issue).

9

decline "to make a decision based on our judgment in the matter," *BethEnergy Mines, Inc. v. Dir., Off. of Workers' Comp. Programs*, 32 F.3d 843, 850 (3d Cir. 1994).

Third, "matter[s] of comity and federalism, independent of principles of judicial immunity,"[11] suffice to insulate state court judges from undue scrutiny in federal court actions. *Pulliam*, 466 U.S. at 539. The *Younger* abstention doctrine, which is "reinforced by the notion of comity," *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (cleaned up and citation omitted), prohibits[12] federal courts from hearing challenges to certain, "exceptional" classes of ongoing state proceedings, including proceedings before state judges, *id.* at 78. Similarly, the *Rooker–Feldman* abstention doctrine[13] prohibits state-court litigants from challenging final "state-court judgments" in federal court to circumvent the normal process of U.S. Supreme Court review. *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 459 (3d Cir. 2019). If we were to construe the doctrine of judicial immunity as broad enough to bar challenges to state-court orders and proceedings

---

[11] We also observe that "[t]he limitations already imposed by the requirements for obtaining equitable relief against any defendant . . . severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants." *Pulliam*, 466 U.S. at 537–38.

[12] *Sprint*, 571 U.S. at 72 ("*Younger* exemplifies one class of cases in which federal-court abstention is required.").

[13] Named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

10

already covered by these "narrow" and "exceptional" doctrines,[14] we would effectively render those doctrines redundant. It would have been unnecessary for us to conclude, as we did in another case involving Malhan's family court dispute, that *Younger* and *Rooker–Feldman* did not bar Malhan's challenges to a number of the family court defendant's orders: setting his child and spousal support obligations, imposing an administrative levy on his bank account, and garnishing his wages. *Malhan*, 938 F.3d at 456–57.[15]

We decline to extend the doctrine of judicial immunity to this case. Neither do we opt to dismiss the family court defendant on the ground that there is no adversity—no "actual controvers[y]" as is required for Article III jurisdiction," *Whole Woman's Health*, 142 S. Ct. at 532—between Argen and the family court defendant.[16] Argen is not a party to the family court proceeding, so it is not the case that his relationship with the family court defendant is as a litigant before a neutral adjudicator. *Id.* (observing that private

---

[14] *Malhan*, 938 F.3d at 460 (*Rooker–Feldman* "occup[ies] a narrow ground" (internal quotation marks and citation omitted)); *id.* at 462 ("*Younger* applies to only 'three exceptional categories' of proceedings" (quoting *Sprint*, 571 U.S. at 78)).

[15] Although the nominal defendants in the other Malhan case were the U.S. Secretary of State, the New Jersey Attorney General, New Jersey's administrative bodies for family affairs, and their officers, we made clear in that case that Malhan went to federal court after he was "[u]nable to find relief in family court." *Malhan*, 938 F.3d at 456.

[16] As we recognized in *Allen*, judicial immunity and lack of an Article III case or controversy are two distinct grounds for dismissing a judicial defendant as not amenable to suit. 861 F.3d at 443 n.49.

litigants before state courts "generally are not" adverse to "state-court clerks who docket th[eir] disputes and the state-court judges who decide them").

Although we conclude that the family court defendant is amenable to suit for Argen's claim, we do not reach whether judicial immunity or Article III principles bars Malhan's claim because it fails on other, "non-merits grounds[.]" *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 277 (3d Cir. 2016) ("[A] court is not required to establish jurisdiction before dismissing a case on non-merits grounds [such as] claim preclusion" (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)).

III

Malhan's claim fails because it is precluded under the doctrine of *res judicata* by our 2021 judgment order affirming dismissal of his 2020 Complaint. *See Malhan*, 850 F. App'x at 838. *Res judicata* is applicable if there has been a final judgment on the merits[17] in a suit involving the same parties or their agents, and the other suit in which *res judicata* is asserted is based on the same occurrence or series of occurrences. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 276–77 (3d Cir. 2014). A final judgment on the merits in one suit can be preclusive on the other suit, even if the suits do not involve the same set of allegations, if the facts of each case are "indisputably connected" and arise

---

[17] A final judgment on the merits for purposes of *res judicata* is any dismissal with prejudice. *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 610 (3d Cir. 2020).

out of "some form" of the same complained-of conduct by the defendant. *Elkadrawy*, 584 F.3d at 174.

Here, Malhan brought First Amendment challenges to the same 2015 gag order in the same family court proceeding in both the 2018 and the 2020 Complaints, and we affirmed a dismissal with prejudice of Malhan's 2020 Complaint. And application of *res judicata* is appropriate here because it would serve the interests of "fairness, finality, and judicial economy[.]" *Hoffman*, 837 F.3d at 277. Thus, we will affirm the District Court's dismissal of Malhan's 2018 claim, on the alternative ground that it is precluded under the doctrine of *res judicata*.

IV

By contrast, on the record before us, no procedural bar applies to Argen's claim. *Younger* abstention, which the District Court applied in dismissing Argen's claim, is inapplicable with respect to Argen because he is not a party to the family court proceeding. *See FOCUS*, 75 F.3d at 843–44 (holding that a federal court cannot abstain under *Younger* from hearing a federal lawsuit challenging a state court judge's action from a non-party to the state proceeding). Even if we assume that a family court gag order is an order "uniquely in furtherance of the state courts' ability to perform their judicial functions," so that it would satisfy one of the *Younger* doctrine's requirements, *Sprint*, 571 U.S. at 78 (internal quotation marks and citation omitted)*, Younger* abstention is appropriate only if state judicial proceedings are "ongoing," *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). There is no ongoing

13

proceeding involving Argen because he is not a party to the family court matter. *See FOCUS*, 75 F.3d at 843.

Here, Argen's claim could have been dismissed as "completely dependent upon and derivative of Malhan's ability to share [custody dispute] information," *Argen v. Katz*, No. 18-963, 2021 WL 3421567, at *2 (D.N.J. Aug. 5, 2021),[18] if the family court defendant had established the affirmative defense of non-party claim preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 885, 905–07 (2008). The family court defendant, however, did not address whether Argen is Malhan's agent so that they would be the same party for *res judicata* purposes. *Id.* at 907. Thus, we leave it to the District Court in the first instance to evaluate Argen's First Amendment claim on its merits.

And in remanding Argen's claim, we express no view on its merits. We do note that in some circumstances, "privacy rights may outweigh the public's interest in disclosure" of the information sought by a plaintiff claiming a First Amendment right of access. *United States v. Smith*, 776 F.2d 1104, 1113 (3d Cir. 1985) (citing, *inter alia*,

---

[18] Although the District Court did not cite to a case in dismissing Argen's claim as derivative of Malhan's, we note that its reasoning closely resembles that of the Second Circuit in *Spargo v. New York State Commission on Judicial Conduct*, 351 F.3d 65, 73 (2d Cir. 2003) (after abstaining under *Younger* from hearing the state court judge's speaker-based First Amendment challenge to ethics rules, dismissing his supporters' listener claims as "inextricably intertwined with the First Amendment interests asserted by [the judge]").

Because we do not affirm dismissal of Malhan's claim on the basis that it fails on its First Amendment merits, we have not determined that Malhan lacks an "underlying First Amendment right." *Id.* at 84. Thus, it does not necessarily follow from our dismissal of Malhan's claim that Argen lacks a "protected interest in hearing [Malhan] speak." *Id.*

14

*Nixon v. Warner Comm'cns, Inc.*, 435 U.S. 589, 598 (1978)).[19]  In addition, although its interpretation of the First Amendment does not bind us, we observe that the New Jersey Supreme Court has articulated several factors for the "weighing process" between the "public's right" to information about a family court proceeding and the "state's compelling interest in conducting a private hearing," including whether there are "any allegation[s] of physical or psychological abuse[.]" *N.J. Div. of Youth & Fam. Servs. v. J.B.*, 576 A.2d 261, 269–70 (N.J. 1990).  We leave it to the District Court on remand to weigh the relevant interests.

V

For the reasons set forth above, we will affirm dismissal of Malhan's claim.  We will remand Argen's claim for further proceedings consistent with this opinion.

---

[19] *Cf. Nixon*, 435 U.S. at 598 ("It is uncontested, however, that the right to inspect and copy judicial records is not absolute.  Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. *For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not 'used to gratify private spite or promote public scandal' through the publication of 'the painful and sometimes disgusting details of a divorce case.'*" (emphasis added)).

_____

HARDIMAN, *Circuit Judge*, dissenting in part.

I agree with the majority that we should affirm the District Court's dismissal of Malhan's claims against both defendants and Argen's claims against the New Jersey Attorney General. I also agree with the Majority that "a judge who acts as a neutral and impartial arbiter of a statute is not a proper defendant to a Section 1983 suit challenging the constitutionality of a statute. . . . However, a judge who acts as an enforcer or administrator of a statute can be sued under Section 1983 for declaratory . . . relief." *Allen v. DeBello*, 861 F.3d 433, 440 (3d Cir. 2017) (citations omitted). Unlike my colleagues, I believe the state court judge in this case was acting as an adjudicator when he issued the gag order. Therefore, I would also affirm the District Court's dismissal of Argen's claim for declaratory relief against the family court judge.

To decide whether a judge acts as an adjudicator—against whom suit is not proper—or as an administrator—against whom suit might be proper—we consider the procedures the judge is required to follow. For example, when a judge does not initiate the case and the parties are represented by counsel, judges are more likely acting as adjudicators. *See Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 199 (3d Cir. 2000) (holding that judges who commit minors to involuntary drug and alcohol rehabilitation are adjudicators because the proceeding must be initiated by the parents, counsel must be appointed for the minor, and the judge must hold a hearing to decide "a mixed question of law and fact typical to the adjudicative setting"); *see also Sup. Ct. of*

*Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736 (1980) (holding that the state supreme court was acting as an enforcer, not adjudicator, when it initiated disciplinary proceedings against attorneys). Likewise, notice to the parties and hearings suggest that a judge is acting in an adjudicative capacity. *Allen*, 861 F.3d at 441–42 (discussing *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003)). Most relevant to this appeal, judges do not depart from their role as adjudicators simply because they have significant discretion to craft orders regulating the behavior of the litigants before them. *See id.* at 442 (discussing *Nollet v. Justices of the Trial Ct. of the Commonwealth of Mass.*, 83 F. Supp. 2d 204 (D. Mass), *aff'd*, 248 F.3d 1127 (1st Cir. 2000), where the statute gave state court judges significant discretion to craft restraining orders in domestic relations matters). In short, judges frequently exercise discretion when adjudicating cases.

In contrast, when state judges act as administrative officers, they are more likely to be proper defendants to a declaratory judgment action under § 1983. *See Georgevich v. Strauss*, 772 F.2d 1078, 1087–88 (3d Cir. 1985) (holding that judges acted as enforcers in a statutory scheme that gave them, instead of the parole board, the unilateral power to parole prisoners without any procedural constraints). Another important factor is whether the judge acts pursuant to a statute or promulgates his own rules. *See Consumers Union*, 446 U.S. at 731 (holding that the state supreme court acted in a legislative, not judicial, capacity when it promulgated attorney disciplinary rules).

Our opinion in *Allen* exemplifies our fact-intensive approach. There, we held that New Jersey family court judges were not proper defendants in § 1983 actions because they acted as adjudicators when they decided custody matters. *Allen*, 861 F.3d at 442

2

(holding that judges acted in an adjudicatory capacity because, even though they had broad discretion, they decided custody under a statutory standard, had no right to initiate actions, had no administrative functions, did not promulgate any rules, and had to hold hearings in many cases). We did not specifically address whether the family court judges acted as adjudicators when issuing gag orders. Nonetheless, it would be odd for us to say that the custody determination itself is adjudicative, but an order issued in furtherance of the custody determination is administrative.

The facts here demonstrate that the family court judge was acting as an adjudicator when he issued the gag order. The judge did not initiate the action; Malhan's ex-wife did. The gag order issued only after a hearing in which the parties were represented by counsel. The gag order was meant to protect material that, by statute, must remain confidential. Moreover, it applied to both Malhan and his ex-wife. In sum, the family court judge acted in his adjudicatory capacity and was not a proper defendant.

The Majority sees it differently because Argen was not a party to the state proceedings. But to determine whether a judge is a proper defendant we look at his actions, not the characteristics of the plaintiff suing him. *See Allen*, 861 F.3d at 440 (asking whether the judge acts as a "neutral and impartial arbiter" or "an enforcer or administrator" to determine if he is a proper defendant); *Reynolds*, 201 F.3d at 199 (asking whether the judge is "an adjudicator" or "an enforcer or administrator"); *Georgevich*, 772 F.2d at 1088 (asking whether the judges are "neutral adjudicators" or "enforcers"). So the fact that Argen was not a party to the state court proceedings sheds

3

no light on the question whether the family court judge was acting as an adjudicator or an administrator when he issued the gag order.

The family court judge did craft the gag order, but that alone does not make him a proper defendant. Unlike in *Consumers Union*, the family court judge in this case did not promulgate a general legislative rule; he issued and applied a gag order to the litigants before him. *Cf.* 446 U.S. at 731 (holding that the state supreme court acted in a legislative capacity when it promulgated its disciplinary rules).

Finally, I am concerned that the Majority's decision to allow a § 1983 suit against the family court judge disincentivizes litigants from resolving their grievances through the normal process: appeal in the state courts. State court judges decide constitutional issues every day. By allowing federal suits to proceed against those judges, the Majority sanctions an unwarranted federal incursion against our state court judges.

For these reasons, I respectfully dissent from the Court's decision to the extent it remands the case for further proceedings against the family court judge.